UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

SAHRAN WILSON-ROBINSON                                        CIVIL ACTION

VERSUS                                                        NO. 10-584

OUR LADY OF THE LAKE REGIONAL
MEDICAL CENTER, INC.                                          SECTION "K"

## ORDER AND OPINION

Before the Court is defendant Our Lady of the Lake Regional Medical Center, Inc.'s renewed motion for partial dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 26). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motion.

I.   BACKGROUND

Plaintiff Sahran Wilson-Robinson, an African-American, is a former employee of defendant Our Lady of the Lake Regional Medical Center ("OLOL"). While employed by OLOL, Ms. Wilson-Robinson overheard a conversation between a white coworker and a supervisor during which the coworker referred to another African-American employee as "nigger bitch." Ms. Wilson Robinson reported the incident to a supervisor. Following an internal investigation, OLOL terminated the coworker who used the slur.

Although Ms. Wilson-Robinson described her work experience with OLOL as initially pleasant; she claims that the situation soured after she reported her coworker's use of the racial slur. Ms. Wilson-Robinson believed that the workplace atmosphere became "tenser and less cordial" as coworkers refused to socialize with her and supervisors began to take note of her

1

frequent tardiness. Additionally, Ms. Wilson-Robinson thought that OLOL subjected her to scheduling annoyances, including changing her shifts at the last minute and failing to promptly inform her of the holiday schedule. Several months after Ms. Wilson-Robinson reported her coworker, OLOL terminated her employment, citing her unprofessional behavior as the reason for its action.

Plaintiff filed suit alleging race discrimination under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq, and Louisiana law. She also alleged a state law claim for intentional infliction of emotional distress and claims under 42 U.S.C. § 1983. Ms. Wilson-Robinson later amended her complaint to allege additional facts and apparently substituted a claim under 42 U.S.C. § 1981 claim for the previously alleged claim under § 1983.[1] Thereafter OLOL filed this motion seeking dismissal of each of plaintiff's claims, except her claim for retaliation under Title VII.

## II. STANDARD OF REVIEW

In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007), the Supreme Court "retired" the *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957), standard for analyzing a motion to dismiss under Rule 12(b)(6) which held that a district court may not dismiss a complaint for failure to state a claim "unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Noting that the *Conley* pleading standard "is best forgotten as an incomplete, negative gloss

---

[1] It is unclear whether plaintiff amended her complaint to substitute the § 1981 claim in place of the § 1983 claim intentionally or as the result of a typographical error. Nevertheless, out of an abundance of caution, the Court will address plaintiff's claims under both § 1981 and § 1983.

2

on an accepted pleading standard," the Supreme Court announced that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. Id., 127 S.Ct. at 1969. "To survive a Rule 12(b)(6) motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570, 127 S.Ct. at 1955. A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court should not accept as true a plaintiff's conclusory allegations, unwarranted factual inferences, or unsupported legal conclusions. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 210, 210 (5th Cir. 2010).

III.   LAW AND ANALYSIS

   A.   State Law Race Discrimination Claim

The Louisiana whistleblower statute provides that "[a]n employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law . . . [d]iscloses or threatens to disclose a workplace act or practice that is in violation of state law." La. Rev. Stat. § 23:967A(1). Louisiana's whistleblower statute does not define "employer." However, courts have consistently applied the definition of "employer" set out in La. Rev. Stat. § 23:302, Louisiana's general employment discrimination statute. *Johnson v. Hospital Corp. of America*, 767 F.Supp.2d 678, 691 n 2 (W.D. La. 2011) (citing *Jones v. JCC Holding Co.*, 2001 WL 537001, *3 (E.D. La. May 21, 2001); *Langley v. Pinkerton's Inc.*, 220 F. Supp.2d 575, 580 (M.D. La. 2002); *Jackson v. Xavier Univ. of Louisiana*, 2002 WL 1482756 (E.D. La. July 8, 2002)). Section 23:302

specifically exempts from the statute's coverage "[e]mployment of an individual by . . . any nonprofit corporation." La. Rev. Stat. § 23:302(2)(b).

OLOL contends it is a nonprofit corporation, and that plaintiff has admitted as much. Plaintiff's original complaint specifically characterized OLOL as a "non-profit organization," and her amended complaint adopted "in toto the original complaint." Doc. 1, p. 1; Doc. 18, p. 1. Viewing the pleadings in the light most favorable to plaintiff, the Court concludes that defendant is a nonprofit corporation and thus not an "employer" for purposes of §§ 23:302 and 23:967. Accordingly, the Court dismisses Ms. Wilson-Robinson's state law discrimination claim.

B.  Title VII Hostile Work Environment Claim

The plaintiff in a Title VII hostile work environment claim must establish that (1) she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118, 125 (5th Cir. 2011). To affect a term, condition, or privilege of employment, the race-based harassment must have been "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citing *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). In determining whether a hostile work environment existed, courts must consider the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it was physically threatening, or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. *Id.* (citing *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)). The environment

4

must have been "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Hernandez*, 641 F.3d at 125 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

Plaintiff's hostile work environment claim fails. The factual allegations of plaintiff's complaint and amended complaint do not allege that the vast majority of the harassment she allegedly endured resulted from her race. Based on the allegations of the complaint and amended complaint, the bulk of the alleged harassment occurred as retaliation for reporting her co-worker. The complaint alleges only that plaintiff overheard a single racial slur. The solitary, isolated utterance of a single racial slur, standing alone, is not sufficiently severe or pervasive to create Title VII liability, especially where is was not directed at plaintiff. *See Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 348 (5th Cir. 2007); *Hockman v. Westward Communications*, LLC, 407 F.3d 317, 328 (5th Cir. 2004). The "severe or pervasive" standard is intended to filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). As such, numerous district courts, in this circuit and others, have dismissed on 12(b)(6) motions claims alleging insufficiently severe or pervasive conduct. *See, e.g.*, *Phillips v. UPS*, 2011 WL 268725 (N.D. Tex. 2011); *Triplett v. Starbucks Coffee*, 2011 3165576 (N.D. Ill. 2011); *Mangum v. Town of Holly Springs*, 551 F.Supp.2d 439 (E.D.N.C. 2008); *Chan v. County of Lancaster*, 2011 WL 4478283 (E.D. Pa. 2011). A reading of the facts alleged by plaintiff does not establish that it is plausible that the harassment based on race was so severe and pervasive that if affected a term, condition or privilege of plaintiff's employment.

5

Case 3:10-cv-00584-SRD -JW   Document 32    12/06/11   Page 5 of 9

Additionally, plaintiff does not dispute that, after she reported her coworker's racial slur, defendant conducted an investigation, and ultimately terminated the coworker. Doc. 28 at 1-2. Plaintiff is therefore unable to satisfy the fifth element of her prima facie claim, i.e., that the defendant failed to take remedial action. Accordingly, the Court dismisses plaintiff's Title VII hostile work environment claim.

C. Section 1981 Claim

Section 1981 prohibits race discrimination in the making and enforcing of contacts. 42 U.S.C. § 1981(a). Courts analyze employment discrimination claims brought under § 1981, including hostile work environment and retaliation claims, under the same standards applicable to Title VII claims. *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). Thus, for the same reasons discussed above, plaintiff's § 1981 claim for hostile work environment is dismissed. Plaintiff's § 1981 retaliation claim, assuming she intended to bring one, survives this motion as not challenged by defendant.

D. Section 1983 Claim

Section 1983 protects only against deprivation of civil rights that occur "under color of state law." A court can find that state action exists "only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348 (5th Cir. 1985) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534, 546 (1982)). Simply put, plaintiff has not alleged any facts that could be construed as state action.[2] The Court therefore dismisses her § 1983 claim.

---

[2]Plaintiff stipulated in her response to defendant's original motion to dismiss that defendant was not a state actor. Doc. 5 at 1. While that motion has been vacated, plaintiff's stipulation nevertheless corroborates the Court's conclusion that plaintiff is unable to allege any

6

E.  State Law Claim for Intentional Infliction of Emotion Distress

To state a claim for intentional infliction of emotional distress ("IIED") under Louisiana law, a plaintiff must show "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *McCoy v. City of Shreveport*, 492 F.3d 551, 563 (5th Cir. 2007) (quoting *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991)). The conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. Cases arising in the workplace are limited to situations where the distress is "more than a reasonable person could be expected to endure" and the offending conduct is "intended or calculated to cause severe emotional distress." *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1026 (La. 2000). "[O]ridinarily employment disputes, even those involving discrimination and sexual harassment, will rise to the level of [IIED] only in the most unusual of cases. *Guichard v. State of Louisiana*, 2011 WL 3900051, *5 (E.D. :a. Septe,ber 6, 2011) (internal quotation and citation omittd).

The threshold for outrageous conduct is high. The conduct alleged by plaintiff, even considered in the light most favorable to her, cannot satisfy the level of outrageous behavior required by *White*. In addition to hearing the racial slur, plaintiff alleges, *inter alia*, that she was ordered to meet with supervisors, that her schedule was changed, that her supervisor questioned her tardiness, and that her coworkers avoided her. In *Smith v. Amedisys Inc.*, 298 F.3d 434 (5th Cir.

---

facts indicating that defendant is a state actor.

2002), the Fifth Circuit affirmed the dismissal of a complaint that alleged conduct at more severe

than that alleged in this case:

> Smith testified that she felt angry, embarrassed, disgusted, humiliated, horrified, and repulsed when Seth made physical and verbal sexual advances toward her. She believed that the sexually oriented statements made by Morel were "disgusting" and she felt "belittled" and "embarrassed" by Morel's comments, which made her feel as though she was only hired to work for Amedisys because of her appearance, as opposed to her intelligence and experience. She found Borne's comments about women and African–Americans "repulsive," "horrible," and "very offending." Being asked to resign from her job "was devastating" to Smith and she "wasn't happy," "was very disgusted and disappointed," and "was mad [and] very depressed."

*Id*. at 449-50. Additionally.

> [i]n *McCoy v. City of Shreveport*, 492 F.3d 551, 554, 563 (5th Cir. 2007), the Fifth Circuit affirmed summary judgment for the defendant where the plaintiff, a black city police officer, suffered harassment by a white supervisor who "twice [threw] wadded-up paper in her face and [ ] repeatedly entered her office only to stare at her and laugh in mocking derision." Similarly, in *Baker v. FedEx Ground Package System, Inc.*, 278 Fed. Appx. 322 (5th Cir. 2008), the court affirmed the denial of a claim for intentional infliction of emotional distress where the plaintiff asserted that a coworker subjected her to "several racially insensitive comments" based on her race, including that "she did not want to work with people like" plaintiff, and African-American female, and telling her that "whites rule" and "this should be a lesson, Blacks cannot report to whites."

*Charles v. JetBlue Airways Corporation*, 2009 WL 273206, *12 (E.D. La. January 26, 2009).

The Court acknowledges that *Smith v. Amedisys Inc*, *McCoy v. City of Shreveport*, and

*Baker v. FedEx Ground Package System, Inc.* were all dismissed on summary judgment, not

pursuant to a Rule 12(b)(6) motion. However, those cases accurately reflect the high degree

of outrageous behavior necessary to establish a claim for intentional infliction of emotional

distress. Like the district court in *Guichard*, this Court concludes that plaintiff's allegations

are insufficient to establish extreme and outrageous conduct sufficient for a claim of

intentional infliction of emotional distress. Therefore, the Court dismisses plaintiff's claim for intentional infliction of emotional distress.

For the foregoing reasons, the Court GRANTS OLOL's motion for partial dismissal

New Orleans, Louisiana, this 5th day of December, 2011.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE

9

Case 3:10-cv-00584-SRD -JW Document 32 12/06/11 Page 9 of 9