**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SAHRAN WILSON-ROBINSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-584** |
| **OUR LADY OF THE LAKE REGIONAL MEDICAL CENTER, INC.** | **SECTION "K"(2)** |

**ORDER AND OPINION**

Before the Court is the "Motion for Summary Judgment" filed on behalf of defendant Our Lady of the Lake Regional Medical Center, Inc. ("OLOL") (Doc. 42). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motion.

Background

Sahran Wilson-Robinson, an African-American, began her employment with defendant OLOL as a "Nurse Tech II" in June 2008, and shortly thereafter she became a "Surgical Tech." While employed as a "Surgical Tech" Ms. Wilson Robinson earned $20.00 per hour which included a $2.00 per hour differential paid in lieu of benefits. In December 2008, Ms. Wilson-Robinson graduated from Grambling State University with a nursing degree. In January 2009 she began working in the OLOL "O.R. Internship Program" and earned $21.88 per hour. While working in the internship program, Ms. Wilson-Robinson took her nursing board examination for the first time and did not pass. Following plaintiff's failure to pass that examination, OLOL reclassified Ms. Wilson-Robinson as a "Surgical Tech." She continued to be paid the same hourly rate that she was paid during her participation in the internship program. Ms. Wilson-Robinson never passed the nursing board examination while employed by OLOL.

Holly Leonard, Nurse Manager, supervised Ms. Wilson-Robinson at all relevant times. On

September 16, 2009, Ms. Leonard counseled plaintiff concerning a number of issues, including: 1) being late to work a number of times; 2) failing to clock in or out of work; 3) a mix-up involving a specimen in the operating room; and 4) returning to work after cutting her hand without the appropriate clearance to return to work. During that counseling session, Ms. Wilson-Robinson reported, for the first time, that she had previously overheard a conversation between Mandy Wilson, a white coworker and Jennifer Hebert, a white supervisor, during which Mandy Wilson referred to Danielle Davis, an African-American employee, as "nigger bitch." The offensive comment appears to have been made on either"[a]t the end of August 2009"[1] or on August 19, 2009.[2] Ms. Wilson-Robinson reported the use of the racial epithet to Michele Bush, a supervisor with OLOL. At. Ms. Bush's request, on September 16, 2009, Ms. Wilson-Robinson provided a written statement concerning the objectionable remark. OLOL initiated an investigation into the incident. During that investigation both Mandy Wilson and Jennifer Hebert initially denied that a racial epithet had been used in the conversation. During a later interview Mandy Wilson continued to deny using the racial epithet, but admitted she may have used the word "bitch." OLOL terminated Mandy Wilson on October 13, 2009 for having given a dishonest statement during the investigation..

The following actions occurred after Ms. Wilson-Robinson reported Mandy Wilson's use of a racial epithet:

- Holly Leonard again spoke with Ms. Wilson-Robinson about being late for work and also spoke with her concerning proper techniques for maintaining sterile conditions.
- Holly Leonard completed and reviewed Ms. Wilson-

[1] Doc. 64-2, Affidavit of Sahran Wilson-Robinson, p. 1.

[2] The EEOC "Charge of Discrimination" filed by Ms. Wilson-Robinson with the EEOC indicates that Mandy Wilson made the offensive remark on August 19, 2009.

Robinson's competency rating with her several weeks after completing Ms. Wilson's performance evaluation.

- Mandy Lowery, an OLOL employee, deviated from her usual practice by failing to call Ms. Wilson-Robinson to verify the time she worked on two days when Ms. Wilson- Robinson failed to clock out.
- While working in an operating room, Ms. Wilson-Robinson asked a member of the staff to call the surgery desk to request that a relief technician be sent to the operating room to allow Ms. Wilson-Robinson to go to the bathroom. When the relief did not arrive within approximately seven minutes, Ms. Wilson-Robinson defecated on herself and had to "break scrub."
- On October 1, 2009, Ms. Wilson-Robinson's work schedule changed to move her from a day shift to an evening shift on certain days;
- On October 1, 2009, Ms. Wilson-Robinson emailed Holly Leonard with a request to be 30 minutes late to work on October 7, 2009, and rather than approve the request Ms. Leonard by email, Ms. Leonard spoke with Ms. Wilson-Robinson and told her to swap with another employee or call someone else to work during the time Ms. Wilson-Robinson wanted to miss.
- On October 5, 2009, Ms. Wilson-Robinson sent Holly Leonard another request to be late to work on October 7, 2009 and copied Lisa Boston, an OLOL compliance officer on that email.
- On October 6, 2009, Holly Leonard granted Ms. Wilson-Robinson's request to be 30 minutes late to work on October 7, 2009.
- On October 19, 2009, both Ms. Wilson-Robinson's supervisor and manager watched her set up the instruments for surgery.
- On October 20, 2009, in an email to Monica Fjeldsjo, an OLOL employee, Ms. Wilson-Robinson stated that her hire date was June 23, 2008, and she asked Ms. Fjeldsjo to follow up on that "[s]o I'm aware of where I stand for as seniority." Doc. 42-16, Exhibit O. Ms. Fjeldsjo responded that same date advising Ms. Wilson-Robinson that based on the June 23, 2008 date she had seniority over one additional employee. On November 24, 2009, Ms. Wilson-Robinson again wrote to Ms. Fjeldsjo requesting information concerning the 2010 holiday schedule
- On October 21, 2009, Ms. Wilson-Robinson sent an email to

Jennifer Hebert, Holly Leonard, Mandy Lowery, and Michelle Bush advising them that she is no longer receiving post-“huddle” emails;

- Ms. Wilson-Robinson was required to “scrub in” at a time that she thought she had an open wound.
- On November 6, 2009, additional changes were made to Ms. Wilson-Robinson’s future work schedule.
- On November 30, 2009, Cathy Poche, a nurse in the operating room, reported to Ms. Wilson-Robinson’s manager, that prior to surgery Ms. Wilson-Robinson’s ear had been exposed; and
- December 1, 2009, Stephanie Strickland, a co-employee, told another employee that she did not want to take a lunch break but then changed her mind“after she realized that [Ms. Wilson-Robinson] was to be working with her during the lunch she could have taken.” Doc. 64-2, Affidavit of Sahran Wilson-Robinson, p. 9-10.

On December 16, 2009, Ms. Wilson Robinson filed an EEOC “Charge of Discrimination” alleging racial discrimination based on retaliation for having reported the racial epithet.

On January 15, 2010, several months after being terminated by OLOL, Mandy Wilson, returned to the hospital, entered a restricted area of the surgical department, and was greeted by Michelle Bush and Jennifer Hebert. Ms. Wilson-Robinson reported Mandy Wilson’s visit to Lisa Boston. Shortly thereafter Ms. Wilson-Robinson saw Mandy Wilson at the hospital again and reported Mandy Wilson’s presence at the hospital to Terrie Sterling, OLOL’s Chief Operating Officer. Ms. Wilson-Robinson saw Mandy Wilson at the hospital a third time after Ms. Wilson’s termination.

Stephanie Strickland reported to Holly Leonard that Ms. Wilson-Robinson had failed failure to properly labeled certain drugs that were being used in an operating room. Following that report Ms. Leonard spoke with Ms. Wilson-Robinson concerning the labeling of the drugs in question. Ms.

Strickland also reported to Ms. Leonard that Ms. Wilson-Robinson used the internet at work, and apparently told Ms. Leonard that Ms. Wilson-Robinson was not proficient during nephrectomies.

The following additional facts are also relevant:

- In January 26, 2010, Ms. Wilson-Robinson was assigned to work in the operating room with Dr. Froelich and later that same day was reassigned to work with Dr. Perkowski.
- In February 2010, Jennifer Hebert went to the operating room where Ms. Wilson-Robinson was assigned and examined the "prep tray" to determine if it was labeled.
- After Ms. Wilson-Robinson timely called in to report that she would be late to work on February 2, 2010, Ms. Leonard and Gail Trammel, an OLOL employee, met with her to discuss her reason for being late.
- On February 10, 2010, Melissa Guerin, Holly Leonard and Bonnie Williams, met with Ms. Wilson-Robinson and advised her that during the budgeting process it had been discovered that when Ms. Wilson-Robinson was reclassified as a "Surgical Tech" after she failed to pass her nursing board examination, that her salary had not been reduced to that of a "Surgical Tech" and that beginning February 14, 2010, her pay would be reduced to the appropriate level for a "Surgical Tech."
- Ms. Leonard told Ms. Wilson-Robinson that she needed to remain in the sterile field after she had scrubbed.
- From November 2009 through February 2010, Holly Leonard met frequently, sometimes weekly, with Ms. Wilson-Robinson to discuss her progress and any concerns about her work.

On March 16, 2010, OLOL terminated Danielle Davis. The next day Mandy Wilson was again present at the hospital. That same day Ms. Wilson-Robinson called Lisa Boston to report that Mandy Wilson was in the OR department, outside the women's locker room. Danielle Davis called Lisa Boston and reported that she had received a call and a text from a friend employed at OLOL stating that Mandy Wilson was "back working in the OR" at OLOL. Doc. 42-2, Exhibit A-7. Ms. Davis would not disclose who had called and texted her to report that Mandy Wilson was "back working in the OR." Id. Lisa Boston thought that Ms. Wilson-Robinson had called and texted the information to Danielle Davis, and thought that the communication of such information violated

OLOL's policy of confidentiality with respect to the disclosure of employee and business information.

On March 18, 2010, Lisa Boston and Bonnie Williams met with Ms. Wilson-Robinson. During that meeting Ms. Boston asked Ms. Wilson Robinson if she had called or texted two phone numbers, identified as Danielle Davis's telephone numbers on March 17, 2010. Apparently in response to Ms. Boston's request that Ms. Wilson-Robinson get her phone so that Ms. Wilson-Robinson could check her phone log to see if she had called the identified numbers, Ms. Wilson-Robinson declined to cooperate. Thereafter Ms. Boston recommended to personnel in the Human Resources department that Ms. Wilson-Robinson be terminated for refusing to participate in a compliance investigation.

On March 19, 2010, Melissa Guerin called Ms. Wilson-Robinson and advised her that she would not be terminated as recommended by Ms. Boston. Because Ms. Wilson-Robinson was apparently unable to talk at that time, Ms. Wilson-Robinson told Ms. Guerin that she would call her later. During the later call, Ms. Guerin told Ms. Wilson Robinson that rather than being terminated she was being given an unpaid "Decision Day" to consider whether she wanted to return to work and commit to being a team player or whether she wanted to submit her resignation. At Ms. Wilson-Robinson's request, Ms. Guerin explained the concept of a "Decision Day." Later that day in another phone call, Ms. Guerin again explained the concept of a "Decision Day." On March 22, 2012, Holly Leonard and Melissa Guerin met with Ms. Wilson-Robinson. During that meeting, Ms. Wilson-Robinson indicated that she wanted to pursue the "Decision Day" option and put together an action plan.

Later that same day, Ms. Robinson went to Lisa Boston's office to discuss the compliance

investigation in which she had refused to participate. Ms. Boston declined to discuss that investigation. On March 25, 2010, Holly Leonard, Bonnie Williams, and Melissa Guerin met with Ms. Wilson-Robinson and terminated her employment with OLOL. Details of that conversation will be set forth herein after in the Court's discussion of defendant's contention that it had a legitimate, non-discriminatory reason for terminating plaintiff's employment.

Plaintiff filed suit alleging race discrimination under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq, and Louisiana law. She also alleged a state law claim for intentional infliction of emotional distress and claims under 42 U.S.C. § 1983. Ms. Wilson-Robinson later amended her complaint to allege additional facts, apparently substituting a claim under 42 U.S.C. § 1981 claim for the previously alleged claim under § 1983. OLOL filed a motion seeking dismissal of each of plaintiff's claims, except her claim for retaliation under Title VII, which the Court granted. Doc. 32. OLOL now seeks summary judgment on plaintiff's claim for retaliation.

Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). When the moving party has carried its burden under Rule

56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995).

"A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Pylant v. Hartford Life and Accident Insurance* Company, 497 F.3d 536, 538 (5th Cir. 2007) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment evidence must be "viewed in the light most favorable to the nonmovant, with all factual inferences made in the nonmovant's favor." *Bazan ex rel Bazan v. Hildago County*, 246 F.3d 481, 489 (5th Cir. 2001), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513.

> [C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment. The Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim.

*RSR Corporation v. International Insurance Company*, 612 F.3rd 851,857 (5th Cir. 2010). In deciding a motion for summary judgment, the Court must avoid a "trial on affidavits." Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts" are matters to be determined by the trier-of-fact. *Anderson v. Liberty Lobby, Inc.* 477 U.S. at 255, 106 S.Ct. at 2513.

Law and Analysis

Plaintiff asserts that after she reported to Holly Leonard that Mandy Wilson uttered a racially discriminatory epithet about Danielle Davis, to Jennifer Hebert, an OLOL supervisor, OLOL retaliated against Ms. Wilson-Robinson in a gallimaufry of ways, including:

- changing her work schedule;
- having Holly Leonard speak with her about being tardy to work;
- Holly Leonard giving her a "poor" competency evaluation and Ms. Leonard reviewing Ms. Wilson-Robinson's competency evaluation with her two weeks after Ms. Leonard had reviewed plaintiff's performance evaluation with her;
- failing to provide Ms. Wilson-Robinson with "relief" while she was in a surgical procedure thereby forcing her to defecate on herself and "break scrub";
- failing to prevent Mandy Wilson from returning to the OLOL campus following her termination;
- having Holly Leonard speak with her concerning her failure to maintain the sterility of supplies;
- failing to telephone Ms. Wilson-Robinson to obtain accurate time records when she failed to "clock-out";
- failing to timely respond to Ms. Wilson-Robinson's request to report late to work on October 7, 2009, and failing to place her in "Resource" on that day;
- failing to timely respond to Ms. Wilson-Robinson's email concerning her holiday schedule for 2010;
- reporting Ms. Wilson-Robinson for breach of operating room procedure by having an exposed earring;
- frequent reporting of Ms. Wilson-Robinson for minor infractions;
- allowing Monica Fjeldso "to take call while on leave for surgery";
- being assigned to work with Dr. Perkowski on January 26, 2010 rather than Dr. Froelich when Ms. Wilson-Robinson had already been working with Dr. Froelich on that day;
- Holly Leonard speaking with Ms. Wilson-Robinson concerning whether the drugs in the operating room were labeled;
- Holly Leonard confirming with Ms. Wilson-Robinson the reason she had to leave work early;
- instructing Ms. Wilson-Robinson to remain in the sterile field once she had scrubbed;

- requiring Ms. Wilson-Robinson to scrub with an open wound;
- having supervisors observe her performance in setting up her instruments prior to surgery and in the surgical rooms;
- failing to send Ms. Wilson-Robinson emails following the morning "huddle" meetings;
- having Ms. Wilson-Robinson meet with Holly Leonard on a weekly basis from November 2009 through February 2010;
- reducing Ms. Wilson-Robinson's pay; and
- terminating Ms. Wilson-Robinson's employment.

It is axiomatic that *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), establishes the procedural framework for analyzing motions for summary judgment in cases involving claims under Title VII for retaliation. Under the *McDonnell Douglas* framework, plaintiff must prove a *prima facie* case of discrimination by a preponderance of the evidence. Once a plaintiff establishes a *prima facie* case of discrimination, a presumption of discrimination arises and the burden shifts to the defendant employer to produce a legitimate, non-discriminatory reason for the challenged action. After the defendant employer satisfies its burden of producing a legitimate, non-discriminatory reason for the challenged actions, the plaintiff must present admissible evidence that the reasons offered by the defendant employer are a pretext for intentional discrimination. *Price v. Federal Express*, 283 F.3d 715, 720, (5th Cir. 2002), citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "At this stage, a plaintiff must show that the adverse employment action would not have occurred 'but for' the protected activity in order to prove unlawful retaliation." *Pennington v. Texas Department of Family and Protective Services*, 469 Fed. Appx. 332, 337 (5th Cir. 2012) (internal quotation and citation omitted).

"To establish a *prima facia* case of retaliation a plaintiff must show that (1) that she participated in a protected activity, (2) she suffered an adverse employment action by her employer,

and (3) there is a causal connection between the protected activity and the adverse employment action. *Stewart v. Mississippi Transportation Commission*, 586 F.3d 321, 331 (5th Cir. 2009). "Protected activity" is defined as opposition to any practice rendered unlawful by Title VII." *Williams v. Taco Bell Corporation*, 46 Fed. Appx. 732, 2002 WL 1973807 at *8 (August 2, 2002), citing 42 U.S.C. §2000e-3(a). OLOL does not contest that Ms. Wilson-Robinson's report to Holly Leonard of the racial epithet allegedly made by Mandy Wilson constitutes "protected activity," and the Court construes plaintiff's report of the racial epithet to be protected activity." Thus, plaintiff has satisfied the first prong of her *prima facie* case.

Defendant concedes that plaintiff's decrease in pay and her termination constitute adverse employment actions; however, OLOL denies that plaintiff's other alleged acts of retaliation satisfy the second requirement of plaintiff's *prima facie* case. To qualify as prohibited retaliation, "an employment action must be materially adverse." *Stewart v. Mississippi Transportation Commission*, 586 F.3d at 331. To recover for retaliation "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415, 165 L.Ed.2d 345 (2006) (internal quotation and citation omitted).

> The purpose of this objective standard is "to separate significant from trivial harms" and "filter out complaints attacking the ordinary tribulations of the workplace . . .." [*Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. at 68, 126 S.Ct. at 2415] Even when an adverse action is intended by the employer as retaliation, it must still satisfy this materiality standard. *Id.* at 67-68, 128 S.Ct. at 2414 (explaining that Title VII's anti-retaliation provision "protects an individual from not all retaliation").

*Stewart v. Mississippi Transportation Commission*, 586 F.2d at 331. The Supreme Court made clear

that Title VII "does not set forth a 'general civility code for the American workplace.'" *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. at 68, 126 S.Ct. at 2415 quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 140 l.Ed.2d 201 (1998). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

The Court need not analyze each alleged act of retaliation identified by Ms. Wilson-Robinson. Suffice it to say that only the reduction of plaintiff's pay and her termination constitute materially adverse employment actions sufficient to satisfy the second prong of her *prima facia* case of retaliation. The remaining alleged acts of retaliation while unfortunate and unpleasant are properly classified as normal irritations and tribulations of the work place and are not acts which might dissuade a reasonable worker from making or supporting a charge of discrimination.[3]

Because the reduction of plaintiff's pay and the termination of her employment constitute the only materially adverse employment actions alleged by plaintiff, the Court's evaluation of the third prong of the *prima facia* case analysis will be restricted to whether plaintiff has shown a causal connection between the her protected activity and the reduction of her pay/and or the termination

[3]Disciplinary write ups and micro managing an employee's performance are not materially adverse employment actions. *Earle v. Aramark Corporation*, 247 Fed. Appx. 519, 524 (5th Cir. 2007), *see also Grice v. FMU Techs, Inc.*, 216 Fed. Appx. 401, 404, 407 (5th Cir. 2007) (plaintiff's allegation that he was watched more closely than other employees not sort of action that would dissuade a reasonable employee from reporting discrimination); *DeHart v. Baker Hughes Oilfield Operations*, 214 Fed. Appx. 437, 442 (5th Cir. 2007)(alleged retaliatory written warning would not have dissuaded a reasonable worker from making or supporting a charge of discrimination); *Muse v. Jazz Casino Co.*, No. 09-0066, 2010 WL 254278, at *3 (E.D. La. June 16, 2010) (supervisor's close scrutiny of employee's work not materially adverse employment action).

of her employment.

Causal connection may be established by demonstrating the temporal proximity of the protected activity and the adverse employment action. *Swanson v. General Services Administration*, 110 F.3d 1180, 1188 (5th Cir. 1997). Nevertheless, "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not *always* be enough for a *prima facie* case." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 655 (5th Cir. 200) (internal quotation and citation omitted). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a *prima facie* case uniformly hold that the temporal proximity must be 'very close.'" *Clark County School District v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 1511, 149 L.Ed.2d 509 (2001). The Fifth Circuit has not provided absolute boundaries regarding proximity, noting, "a time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Evans v. City of Houston*, 246 F.2d 344, 354 (5th Cir. 2004) (citations omitted). However, in *Rags v. Mississippi Power & Light Company*, 278 F.3d 463, 472 (5th Cir. 2002), a five-month period between the protected activity and the adverse employment action did not establish *prima facie* retaliation claim.

More than four months elapsed between the protected activity and each adverse employment action. The protected activity occurred on September 16, 2009. The first adverse employment action, i.e., plaintiff's reduction in pay occurred almost five months later on February 10, 2010, and more than six months elapsed between the protected activity and plaintiff's termination on March 25, 2010. Neither of the adverse employment actions are "very close in time" to plaintiff's protected activity. Therefore, the necessary temporal proximity is lacking. Consequently the Court finds that

plaintiff has failed established the causal connection requirement based solely on temporal proximity. Moreover, plaintiff has not offered any other evidence that establishes the requisite causal connection. Accordingly, the Court finds that plaintiff has failed to establish a *prima facie* case of retaliation. Therefore, defendant is entitled to summary judgment dismissing plaintiff's retaliation claims.

For the reasons stated herein above, the Court is convinced that the temporal proximity between plaintiff's protected activity and the reduction of her pay and/or termination is insufficient, standing alone, to establish the causal connection necessary to establish a *prima facie* case of retaliation. However, in the interest of judicial economy, the Court concludes that even if plaintiff established the necessary temporal proximity to satisfy her burden of proving a causal connection between her protected activity and the reduction of her pay and/or termination, and thereby satisfied the requirements to establish a *prima facie* case of retaliation for reduction of her pay and/or termination, OLOL is nonetheless entitled to summary judgment. Once plaintiff establishes a *prima facie* case of retaliation based on the reduction of her pay and/or her termination, the burden shifts to OLOL to articulate a legitimate, nondiscriminatory reason for its employment decision. With respect to plaintiff's claim of retaliation based on her reduction in pay, OLOL asserts that it reduced Ms. Wilson-Robinson's pay after discovering that she was being overpaid as a "surgical tech." In February 2010 during the budget review process, OLOL noted that although it had changed Ms. Wilson-Robinson's employment classification from "Nurse Applicant" to "surgical tech" after she failed to pass her nursing board examination, it had not reduced her pay from the higher rate paid to employees classified as a "Nurse Applicant" to the lesser pay rate applicable to "surgical techs." Doc. 59-2, Ex. A. Affidavit of Lulu Ford. This reason would support a conclusion that plaintiff's

termination was non-retaliatory. Therefore, OLOL's stated reason for reducing Ms. Wilson-Robinson's pay qualifies as a legitimate, nondiscriminatory reason for the reduction in pay.

Because OLOL satisfied its burden of articulating a legitimate, nondiscriminatory reason for the reducing Ms. Wilson-Robinson's pay, the burden shifts to plaintiff to produce evidence raising a genuine issue of material fact as to whether OLOL's stated reason is pretextual. Plaintiff must show that her termination "would not have occurred 'but for' the protected activity . . .." *Pennington v. Texas Department of Family and Protective Services*, 469 Fed. Appx. at 337. "[A] plaintiff may avoid summary judgment on 'but for' causation by demonstrating a 'conflict in substantial evidence on this ultimate issue.'" *Hernandez v. Yellow Transportation, Inc.*, 670 F.3d 644, 660 (5th Cir. 2012) quoting *Long v. Eastfield College*, 88 F.3d 300, 308 (5th Cir. 1996). "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Long v. Eastfield College*., 88 F.2d at 308 (internal quotation and citation omitted). Plaintiff has failed to do so. Plaintiff has not submitted substantial competent summary judgment evidence in support of her contention that OLOL's stated reason for reducing her salary, constitutes a pretext. Plaintiff submitted evidence addressing the budgeting process; however, there is no competent summary judgment evidence that at the time OLOL reclassified plaintiff as a "surgical tech" it agreed to allow her to retain the pay of a nurse intern, that she was otherwise qualified to be paid at the higher rate, or that her new rate of pay was not the proper rate for the "surgical tech" position. Considering the lack of substantial evidence that OLOL's stated reason for reducing plaintiff's pay is a pretext, OLOL is entitled to summary judgment on this claim.

With respect to plaintiff's retaliation claim based on her termination, defendant asserts that

it terminated plaintiff as a result of her insubordinate and "inappropriate interactions" with Lisa Boston, LOL's Compliance Officer during plaintiff's last meeting with Ms. Boston. Lulu Ford stated in her affidavit that "Ms. Robinson was terminated as a result of her inappropriate interactions with the Chief Compliance Officer, Lisa Boston, as reported to me by Ms. Boston. OLOL relied on Ms. Boston's reports in reaching the decision to terminate Ms. Wilson-Robinson." Doc. 59-2, Exhibit A, Affidavit of LuLu Ford, p.2. In a "Memo" to LuLu Ford and Melissa Guerin, Lisa Boston reported that in her last meeting with plaintiff, Ms. Boston opined that "Sahran was hostile and argumentative throughout the conversation" and that "[t]he intent of her visit did not appear to be a step towards an action plan to continue her employment." Doc. 42-2, Exhibit A-10, p.1. Additionally, in her deposition Ms. Ford states that the reason for Ms. Wilson-Robinson's termination was "[h]er inappropriate interaction in the compliance office." Doc. 42-7, Exhibit F, p. 95. During Ms. Ford's deposition, when counsel for plaintiff asked her "[w]as Sahran Robinson terminated for any other reason other than unprofessional behavior," Ms. Ford responded "[n]ot that I know of. That is the reason she was terminated." Id. at 171. The evidence offered in Ms. Ford's affidavit and deposition, if accepted as true, would permit a conclusion that plaintiff's termination was not retaliatory and that the defendant's explanation for her termination constitutes a legitimate, nondiscriminatory explanation for defendant's termination of plaintiff's employment. As noted previously, at this point the burden shifts to plaintiff to demonstrate that the she would not have been terminated "but for" her protected activity. Plaintiff has not carried her burden of revealing "'a conflict in substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment'" *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 685 (5th Cir. 2001) quoting *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).

In attacking defendant's position with respect to why Ms. Wilson-Robinson was terminated, plaintiff submitted proof which she contends supports a conclusion that she was not insubordinate in her final conversation with Ms. Boston. Specifically, plaintiff cites the following colloquy from Melissa Guerin's deposition:

> Q. Do you think that [Lisa Boston] was being polite and kind back to Sahran in that conversation, the one you heard recorded today? Do you think she was being polite and kind to Sahran?
>
> A. I mean it sounded like a mutual discussion.

Doc. 64, Exhibit AX, pgs. 126-127. That excerpt does not undermine defendant's articulated reason for terminating plaintiff. Plaintiff also offers the transcript of the "termination meeting" (Doc. 66-22, Exhibit AW) to help establish that OLOL's stated reason for her termination is pretextual; however, nothing in that transcript supports a conclusion that " reasonable and fair-minded men in the exercise of impartial judgment" might reach a conclusion as to the reason for Ms. Wilson-Robinson's termination other than the reason offered by defendant. Therefore, defendant is entitled to summary judgment.

New Orleans, Louisiana, this 27th day of November, 2012.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE